et cetera, et al. v. John Harrington, et cetera. All right, Mr. Sanders. You may proceed when you're ready. May it please the court, Anthony Sanders for appellants. I'd like to thank your honors for considering our argument this morning. The district court was correct to conclude that appellant farm wineries have an injury in fact, but the district court was incorrect to conclude that that injury is not caused by the law that they are challenging. We ask that this court reverse the district court, conclude that appellants have standing, and then address the merits because there is no doubt that this facially discriminatory law violates the dormant commerce clause. The district court stated that there is no right to sell wine directly to the public in Minnesota, and that's absolutely true. Under the 21st Amendment, there's no right to do basically anything with alcohol under the federal constitution, but that statement put the merits before standing incorrectly. Our merits claim is not that there's a general right to sell wine directly to the public. It is that within the system of the farm winery license, there is unconstitutional discrimination between wine that is made from out-of-state grapes and wine that is made from in-state grapes and other products. For example, my client, Alexis Bailey Vineyard, located outside of Hastings, Minnesota, a have to grow a single grape for the wine that they make and then are able to sell to the public and to retailers. They can outsource all of their grapes elsewhere in Minnesota. For example, they could buy all their grapes from grape growers outside of Worthington, Minnesota, on the opposite side of the state. But if they got a majority of their grapes from a farm outside of Hudson, Wisconsin, just a few miles away across the river, they would be violating the law. And it is that disparity in treatment between in-state and out-of-state products, which the Supreme Court has said numerous times violates the Dormant Commerce Clause, that we are challenging. Again, the state of Minnesota could ban all the production and sale of alcohol, but once it allows that, under the Granholm case and the Bacchus Imports case, it has to be on an even basis. Now, the District Court pointed to this other license we have in Minnesota, the wine manufacturer license, as the reason that the only dispute here is that plaintiffs, the appellants, picked the wrong license. That other license, however, is irrelevant to appellants' claims. Now, not only is that really a different business, wine manufacturer, but it also is just simply irrelevant for the following thought pattern. Say instead of challenging this law in a declaratory judgment action, appellants had just gone forward, not received any kind of one-year waiver that they can get under certain occurrences, and just started making a majority of out-of-state wine and selling it. Well, they could be prosecuted by the commissioner's office for that. In that prosecution, they couldn't say, there's this other license over here that allows us to sell out-of-state wine made from out-of-state grapes, although we can't sell it directly to the consumer, and because of that, there's no jurisdiction in this tribunal. That, of course, would not be an argument they could bring. Well, we're in the same scenario as that prosecution. We're just a couple steps back, because we've used a declaratory judgment challenge under Section 1983 to challenge the law without having to break it. That, of course, is the whole point of declaratory relief under Section 1983. Indeed, if we don't have standing in this challenge, a client's only recourse is going to have to be, if they chose to do so, to violate the law and risk a prosecution in order to argue that this law is unconstitutional. Of course, as this Court has found numerous times, the Jones v. Gale case, SSDS, Hazelton, and the Dormant Commerce Clause area especially, you don't have to do that in order to challenge the constitutionality of law. One other way to think about what's going on here is, if the commissioner were enjoined, say we were successful in this case, and the commissioner were enjoined, my clients then would be able to go forward and do what they want to do. They would be better off. They'd make a majority of products of out-of-state grapes and sell them directly to the consumer and to retailers. If the injunction, if an injunction of the commissioner and the law that he enforces would make them better off, then it is causing the injury that my clients either suffer from or are imminently going to suffer from. One other point about the wholesale business, the farm winery license versus the farm manufacturers license. It's not just that there's a little bit different of a fee and you do things differently as the District Court discussed. It's that you have a whole different customer base. You'd have to shut down your tasting room. You can't have the consumers come directly to your business anymore. You can't sell directly to liquor stores or other retailers anymore. You'd have to get a whole new set of customers, the wholesalers, who you would then sell to, which would be at different prices, different contracts, different relationships. The fact that you would have to do all that differently to do part of what you want to do shows that they're standing here in trying to work within the farm winery license and challenging this disparity, this discrimination that's within it. The District Court relied primarily on the McConnell case, and I'd like to briefly address that, a campaign finance case, of course. In that case, those plaintiffs were challenging the campaign finance law because third parties had a leg up on them, was their claim. They were raising more money than the plaintiffs wanted to raise. But the difference between that case and here is, in that case, they weren't asking the government to not enforce a law against them, but to have it against third parties. This court had a similar case in the Bollock versus Lombardi case. And there, the plaintiffs were challenging our Arkansas law, and they were asking that that law be found unconstitutional. But the problem was that law wasn't enforced by the defendants, by the government. It's actually enforced by third parties, private third parties. And so this court found there's no traceability because you didn't sue the right party. There's no question in this case that the commissioner is the right party in the Section 1983 action as a defendant. And that's why McConnell simply doesn't apply to this case. I'd like to very quickly also address the merits before my rebuttal time. This is the case where the court should consider the merits if they find that appellants have standing. It's not a case where it wasn't talked about below and we just happen to want to talk about it here. The merits were fully briefed and argued to the district court. They've been fully briefed to this court. We're arguing about it again today. It's on summary judgment with de novo review. And most importantly, as this court has said, in considering whether it should use its discretion to address the merits, the merits are beyond any doubt. This is a facially discriminatory law. And thus, under the cases I cited earlier, it's subject to strict scrutiny. My honorable friend on the other side has done his best to argue that this is not facially discriminatory, but the statute speaks otherwise. 340A 101 subdivision 11 says a farm winery is a winery operated by the owner of a Minnesota farm that makes wine, quote, with a majority of the ingredients grown or produced in Minnesota. You can't get more facially discriminatory than that. So what we're asking is that those 11 words at the end of that sentence be declared unconstitutional and the injunction against them. And in case there's a... And I'm not sure that I've kind of... I think I've forgotten exactly the distinction between the different licenses. But if your client had one of the other licenses, would that enable it to do all of the business that it wants to do? No, because the... That's a great question, Your Honor. The holder of a wine manufacturer license is prohibited from selling to retailers and to consumers. So they could not, for example, have people come to their property and sample their wines and buy their wines. Now, they could. There is an exception. They couldn't sell to retailers at all, which they currently do. They could sell to consumers if they use a majority of Minnesota grapes, which is, of course, exactly... What is the kind of business that the appellant wants to do that it cannot do under this regime? It wants to be a Minnesota farm winery that, among other things, can sell directly to consumers and retailers. And it wants to use a majority of out-of-state grapes to make that wine. And it doesn't want to be contingent upon this one-time, one-year affidavit exemption. Let's forget about the exemption, just the provisions of the different licensing. So what they want to do is expand through the use of using more out-of-state grapes, which would constitute a majority, and then sell that directly to consumers and retailers. So is it true to say that, as it stands now, there is no level of license that would satisfy the needs of the appellant? That's right. That's right, Your Honor. So if we... Now, was this same licensing regime in place when the business began, when it first was licensed? So this license was adopted in 1980. Alexis Bailey Vineyard was around in 1980, had started briefly before that. Before that, there was the wine manufacturer's license that did allow them to sell directly to consumers, again, if it was a majority of Minnesota products. Now, next chapter has only begun in, I think, the first year they began selling to the public was 2014. So it's very much been around for them the entire time. I'd like to conclude before I save the rest of my time for rebuttal by noting that counsel on the other side has conceded they don't have evidence to rebut strict scrutiny determination, which would be applied if this law is facially discriminatory. And so really, the only question on the merits is, is this facially discriminatory? It is. Therefore, strict scrutiny applies. And this is not a situation where that would be overcome. And thus, the law is unconstitutional. I'll save the rest of my time for rebuttal. Thank you. Thank you. Mr. Marysam? Marysam, yes, Your Honor. I may please the court. Jason Marysam for the Minnesota Commissioner of Public Safety. We ask this court to affirm the district court's finding that appellants lack standing. I want to discuss a couple of reasons. First is they have no standing under a pre-enforcement theory. And they also have no standing based on economic or fiscal injury traceable to the statute. Before I jump in there, I want to get to the question, Your Honor, about what exactly the appellants are asking for and provide the context there. So Minnesota, like a lot of states, is a three-tiered structure that separates manufacturing from wholesale and distribution from retail. Generally, that's the scheme. And the Supreme Court has affirmed that that is constitutionally permissible to separate that. The farm winery license is an exception to that separation because it lets the farm wineries make their own wine and sell it directly to retail and consumers. And what they're asking for is they say, hey, we want to be able to make wine with whatever ingredients we want and sell that directly to retailers and consumers. That is not a constitutionally cognizable injury, the fact that they can't do that, the fact that Minnesota doesn't offer that license because the Supreme Court— Well, counsel, that's not precisely what they're arguing. Is it they're arguing that they want to use out-of-state grapes? Yes, yes, right. It's not that they want to use whatever they want. The specific claim is it's a dormant commerce clause, facially discriminatory. So it's a narrower claim, I think, in my mind, at least, than you just suggested, is my view, I think. Yeah, that's a fair point. The larger point is that Minnesota doesn't offer the license in the way that they want it, but Minnesota is not constitutionally required to offer that license. Put aside the interstate discriminatory piece. But I think their argument is if they do offer the license, it must be done so in a constitutional manner. Yes. And I think that's the issue that I'm looking at, at least here. Absolutely, and I agree that that is correct. The license needs to be offered in a constitutionally permissible manner. Stepping back is the question of standing. Do we even get there? The primary theory that they advance is a pre-enforcement theory. The problem they have is this law has been on the books since 1980. No farm winery has ever been penalized or threatened with a penalty. The Department of Public Safety, DPS, has not ever requested a record from a farm winery to determine whether they're in compliance. This is in the McManus deposition. So... So, counsel, if we find there's no standing, if we firm the district court here, and the appellants violate the statute, what happens? The record doesn't establish that because it's never happened. So Mike McManus is the DPS official who's in charge with enforcing it. And so he was asked this at deposition, and he laid out typically what would happen in a sort of larger scheme. If they got a complaint, basically what he said is we would never know. We would never know if they weren't doing it. But isn't that the ambiguity that the district court kind of relied on, these financial standing issues, the inability to get loans? Because as you just conceded, no one knows. They might be prosecuted. They might be shut down. They might not. Now, isn't that what the district court found to be sufficient for the first prong of the standing argument? And so I think here's where I think the district court got it wrong in the first prong, but why they got it right on the second prong. And it really comes down to the Jones v. Gale case, which is what the district court relied on, what appellants rely on. So in that case, Nebraska essentially passed a constitutional amendment, but a law prohibiting out-of-state corporations from engaging in farming and owning farmland. So you had a business whose job was to raise livestock for out-of-state corporations. They have ongoing business relationships. And then you have someone who owns farmland who wants to transfer that to a corporation. All that is in play. This is the value of their land, the value of the businesses. Boom, the law comes out. Now they're prohibited from doing what they have been doing, what they intend to do. Their businesses and land lose value immediately. There's some language in there, in that opinion, talking about the injury being fiscal planning. I would submit that reading that case in context, it isn't a business's routine fiscal planning isn't recognized as a cognizable injury. It is their existing business relationships were now suddenly unlawful. The existing value of the land suffers because of the law. That's not what we have here. They don't even have a cognizable economic or fiscal injury to begin with. Even if you recognize they do, here's where the choice comes in. Not necessarily the choice of license, but it goes to Judge Shepard's question. Even if a business's routine fiscal planning to complies with the law on the books is an injury, they chose to get this license. The farm wineries have always operated under this scheme. This is wholly different than Jones v. Gale, where you have a business contracting with out-of-state corporation, boom, there's a law that's enacted that says, can't do that anymore. Their whole business model is gone, the value of the business deprived. Here, they couldn't argue. They've always operated under this scheme. There's no value. I take your argument, counsel, but what I struggle with is the state has offered this regulatory framework. It's offered to everyone in the state. Some people choose to do it this way. Some people choose to be retailers. Some people don't get involved in the alcohol business at all. But when the state makes a regulatory framework available, it seems to me there may still be an obligation, or there is an obligation, it appears to me, to do it in a constitutional manner. So there's always going to be a case, or often will be a case, where there's a regulatory framework that's established that a given plaintiff can choose another way to do it. I think the argument here is you're offering it. You have to offer it in a constitutional manner. And I think that's different than the argument you've just made. No, I can see that point, Your Honor. I mean, once the state chooses to set it up, they have to set it up in a constitutional way. I'm stepping back and saying, this isn't presented to you in a way where the jurisdiction exists because it's standing. And I'll take on the point that appellants say, well, if they don't have standing, they just need to violate it and there's nothing they can do. Well, first, the standing analysis doesn't necessarily get to that. If they don't have standing because there's been no enforcement, then that's the issue. However, I want to touch on the exemption process for a second. The exemption process allows farm wineries to apply for a one-year exemption from the commissioner. Statute just says if you don't have the grapes needed, you can apply for an exemption. Every farm winery that has applied for an exemption has always gotten it. The testimony from the DPS official is that it has the effect of a rubber stamp. McManus, the DPS official, was asked, well, what about a situation where the farm winery said, we just want to make varietals that you can't grow in Minnesota? We just want to make California wine. He said, I've never had that situation, but I can't see that I would recommend that the commissioner deny that. Deposition testimony pushed further. What if the exemption request just said, we want to make more money. That's why we want the exemption. He said, never had that situation. You're asking me to speculate. I don't know what I would do. So there's nothing in the record to suggest whether they'd get a denial or not. I don't want to tell them how to litigate the case, but this is not a situation where they said, we want an exemption. So let's say here's what they want. They want to be able to use these out-of-state grapes. If they had asked for an exemption, if it's approved, there's no harm. If it's denied, well, then you're in a situation where there's actually an action from an agency, and the standing analysis looks very different. But I thought the exemptions were only for a year. That's correct. They are for a year, Your Honor. That makes it a little difficult to do any kind of planning, I would think. Yes, so the- What's your thought about that? The two pieces on the fiscal planning. First, the injury can't be speculative or hypothetical. On this record, with no farm winery ever being denied, ever, and the DPS official at deposition testimony not being able to identify a single situation where he would deny it, I think it's hard to get around that being a speculative hypothetical injury if you're trying to trace it through the exemption process. I don't see how they can get an injury through the exemption process when every farm winery who's ever applied has been granted it, and there's nothing in the record. That's showing there'd ever be a reason for a denial that DPS would deny it. As for- And I think what the district court struggled with is the- gets back to this, can a business have an injury just routine fiscal planning? That's where the district court found the injury cognizable. We dispute that. I mean, I think everyone goes through life, fiscal planning to comply with all sorts of laws. I would submit that doesn't give you an injury to just go around challenging those laws. You need something a little bit more than just a balance, my books, with this. And it's distinguishable again from the Jones v. Gale case where their whole business model was being threatened, their value of the land declining immediately because of the law. That's not what we have here. And even if the routine business fiscal planning is an injury, unlike in Jones v. Gale, it's an entirely different situation where they've been operating under the scheme in some case for decades, but the scheme's been around since 1980. The businesses, they choose to get this license, choose to operate under the structure. Their ongoing business relationships aren't threatened because of the law. So on that point, you say that when the- this has been a longstanding regulatory framework and at the very beginning, they could have selected another license. Yeah, and- Is that the point? I think the point is, Your Honor, it's a little bit more than that. It's that really distinguishing Jones v. Gale, where you don't have- this isn't a situation where they've been operating, they've got a business. Here's what we're doing. And then Minnesota comes and says, hey, we're changing this up on you. Your existing contracts are now unlawful. Your existing business model is gone. The value is declining. I think that's my main point that makes Jones v. Gale and South Dakota v. Hazeltine as the same law for South Dakota, same case, makes those wholly distinguishable. And so if you step back, you say, OK, how do they get a pre-enforcement standing on a law that's never been enforced, exemptions that have never been denied? I don't believe they can. We have- those cases are the Susan B. Anthony case where the plaintiffs actually had been targeted for enforcement by the law. We don't have that here. There are other cases like Holder v. Humanitarian Law Project where people other than the plaintiffs had been prosecuted for the same conduct. We don't have that here. No farm winery's been punished. And then there are cases like Virginia v. American Booksellers where the Supreme Court suggested there could be a presumption that newly enacted laws would be enforced. That was a challenge to a law before it went into effect prohibiting the display of sexually explicit material in bookstores. And the court was willing to presume that there was no reason not to put it would be enforced. We don't have that here either. The law's been on the books since 1980. So looking through the pre-enforcement case law, I don't see where this fits in anywhere. So then that brings us to the economic injury, which I distinguish- the Jones v. Gale case, which I distinguish for the reasons we've been discussing. Let me see here. Just check my notes. I will- a couple points in response. We're not arguing that the commissioner's a proper party under sort of Ex parte Young 11th Amendment. But that is a separate analysis than standing. And so standing is our argument here. And then I will say- one other point- two other points. There's an email in the record from the Agriculture Department which consults with the commissioner suggesting that the exemption is for one-time unforeseeable events only. That email- there's nothing in the statutory text that says that's the standard or public safety rule or public safety interpretive guidance. And agriculture isn't the decision maker. It's the DPS commissioner that's the decision maker here. And DPS has not interpreted the statute that way. What's relevant is what Mike McManus, the DPS official, has testified to in his deposition. The one point where I agree with Mr. Sanders is- I would say this is a case- if you do find standing- and again our position is they lack standing- if you do find standing, I think it's appropriate to reach the merits. It's a facial discrimination charge. It was briefed below. I don't think there's any record that would need further development. Let me ask this question. In order to do what the appellate wants to do, would it be true that it would have to obtain- and the exemption issue aside- to do what it wants to do, it would have to obtain a different license? Yes, but I think the larger- there is no- Minnesota doesn't offer a license that would let it do everything it wants to do. So it would have to change its business model? It would, yes. Once they've entered this regime, I think- yes, there is no license that lets them do everything. Is that a significant enough complication here to make the injury traceable to the existence of the regulatory scheme? The distinction that I'm making, Your Honor, is that this isn't a case where there's a new regulatory scheme that comes in. They've got this business model up and running. They have always operated their businesses in line with the requirement. They've always operated it that way. They knew what they were getting into when they applied. They've always operated that way. So Minnesota is not required to say, hey, you're not happy with all those terms. We're going to offer you this license, too. So once they've set up their business, there's no- it comes back to me of what- if you're saying there's an economic injury from the enactment of the law, well, no, there isn't. This is really what distinguishes it from the Jones v. Gale finite cases. Well, maybe if the case went forward, they would lose on the actual constitutionality. But as far as I'm thinking about what the injury is, whether there's an injury, and secondly, what it's traceable to, is it traceable to state action or to something attributable solely to the appellant here? I know. And I take the point, Your Honor. I looked through all the cases. I said, is there a case out there that we just lose on that says you hold a license and there's a term for that license and you get to just challenge it? I couldn't find it. It needs to be enforced against them.  And so I take the point, Your Honor. But I don't think that's the state of the case law. All right. Thank you. All right. How much time does Mr. Sanders have? Two minutes, 53 seconds, Your Honor. OK. Thank you, Your Honors. Your Honors, there is no statute of limitations on challenging the unconstitutionality of the law. Whether this law was passed in 1980 or 2019, if it's unconstitutional, it can be ruled as such. And it can cause my clients harm. Counsel, Jones versus Gale. Counsel, for your opponent, indicates it's distinguishable. What's your position on that? Yes. In Jones versus Gale, the harm that those plaintiffs were alleging was not what was currently going on. What both of them said, both of them were owners of farms in Nebraska. And they said that eventually, I'd like to sell this to an out-of-state corporation. One of them said, well, part of my estate planning purpose is whenever I pass away, I'd like to have my estate pass it on to another corporation. They didn't have, at least part of the ruling, and it may have been all the ruling, the standing analysis in that case, was that it wasn't existing contracts that were being rescinded because of the law. It was that they didn't have fiscal planning for the future. And that's why this court squarely ruled that that fiscal planning constituted a standing. Today, opposing counsel, once again, does not disavow that they've never enforced this law. Essentially, what opposing counsel is saying is that this is a hard law for us to catch you on. So maybe if you break it, you'll be OK. My clients can't depend on that. My clients don't want to violate the law. If they do openly violate the law, and they tried to get a loan from a bank, and they have to say we're in compliance with our license, well, they would either have to say they're not, and perhaps we denied the loan, or they'd say they are, and risk violating the False Statements Act, or just one example of the complications that could come from that. In the laws in Greenholm that were challenged, the out-of-state shipping laws had been around for a while, and yet those plaintiffs, standing wasn't even an issue. Those plaintiffs were able to go forward and have those laws declared unconstitutional. One other point about the three-tier system, this is not an attack on the three-tier system. Greenholm said plainly that within the three-tier system, if you have discrimination against out-of-state and in-state products, then that is unconstitutional. The standard here is whether there's a substantial risk of harm. My clients have gotten waivers in the past some years. Some years they have not asked for them, and that's because the law is very clear that you can't get a waiver for any reason. Whatever an employee of the commissioner says versus an employee of the Department of Agriculture, it says not available in quantities sufficient to constitute a majority of the wine. You can't get a waiver just because you want to grow your business, which is what my clients want to do. With that, we'd ask that you reverse the district court. Thank you, Your Honors. Thank you very much. All right. Thank you for your arguments. The case is submitted, and you may stand aside.